UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| HECTOR NATAL, | |
|---|---|
| *Petitioner*, | Civil No. 3:18cv1572 (JBA) |
| *v.* | |
| UNITED STATES OF AMERICA, | |
| *Respondent.* | April 17, 2020 |

**RULING ON MOTION FOR RELIEF UNDER 28 U.S.C. § 2255**

Petitioner Hector Natal moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his current sentence of imprisonment. ([Doc. # 1].) The Government opposes Petitioner's Motion. For the reasons set forth below, Petitioner's Motion is denied.

**I.  Background**

In 2013, Petitioner Hector Natal was jointly tried with his co-defendant, Hector Morales, on charges of arson resulting in death, attempted arson, conspiracy to distribute controlled substances, witness tampering, and conspiracy to tamper with witnesses. On April 18, 2013, a jury found Petitioner guilty on all counts against him. (*See United States v. Natal*, 3:12-cr-00164-JBA, ECF No. 189, at 6 (D. Conn. Apr. 18, 2013).)[1] Petitioner then moved for a new trial pursuant to Fed. R. Crim. P. 33, which the Court denied. (*See id.*, ECF No. 257 (Aug. 7, 2014).) The Court ultimately sentenced Petitioner to life imprisonment on the arson counts and 240 months on the remaining charges to run concurrently with a 40-year term of imprisonment on the conviction

---

[1] The jury also found his co-defendant Mr. Morales guilty of counts of conspiracy to distribute controlled substances, accessory after the fact to arson, witness tampering, conspiracy to tamper with witnesses, and the destruction and concealment of evidence.

resulting from Defendant's guilty plea to a cocaine possession charge. (*See id.*, ECF No. 305 (Apr. 2, 2015).)

Petitioner appealed his conviction. (*See id.*, ECF No. 306 (Apr. 3, 2015).) He "raise[d] numerous claims, including allegations that [his] Confrontation Clause rights were violated at trial, that there was a prejudicial variance between the indictment and the proof at trial, that the district court erroneously admitted lay opinion testimony concerning the operation of cell phone towers, . . . [and] that [his] sentence was imposed in contravention of the Eighth Amendment." *United States v. Natal*, 849 F.3d 530, 533 (2d Cir.), *cert. denied*, 138 S. Ct. 276 (2017). The Second Circuit rejected these claims and upheld all counts of Defendant's conviction. *Id.* at 533-34.

On September 17, 2018, Petitioner timely filed a motion under 28 U.S.C. § 2255.

**II. Legal Standard**

A prisoner in federal custody may move to vacate, set aside, or correct his sentence only "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation and quotation marks omitted). To prevail on a § 2255 motion, a petitioner must demonstrate either the existence of a "constitutional error . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (citations and quotation marks omitted).

In ruling on a § 2255 petition, a district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) ("[28 U.S.C. § 2255(b)] does not imply that there must be a hearing where the allegations are vague, conclusory, or palpably incredible." (internal quotation marks omitted)). To justify a hearing, the petition "must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." *Gonzalez*, 722 F.3d at 131.

### III. Discussion

Petitioner presents four grounds for relief in his § 2255 Motion, and he represents that he failed to raise these issues on his appeal from the judgment of conviction because his counsel was ineffective.[2] On Ground One, he contends that the Court had a duty to sever his trial from that of his co-defendant under *United States v. Rittweger*, 524 F.3d 171, 179 (2d Cir. 2008), and *Schaffer v. United States*, 362 U.S. 511, 516 (1960), and that he was prejudiced by his co-defendant's grand jury testimony and by the "impeachable testimony of [Jessica] Feliciano." (Pet.'s § 2255 Motion at 5.) At Ground Two, he asserts that his trial was constitutionally defective because the prosecution relied on the "impeachable testimony of Gabri[e]l Vega," who "was given money, housing, and reduced charges" for his testimony at Petitioner's trial. (*Id.* at 6.) On Ground Three, Petitioner contends that his trial was defective because the Court failed to order a "voice analysis" of an

---

[2] At the outset, the Court notes that Petitioner's Motion is spare. Petitioner did not attach a memorandum or letter elaborating on the factual or legal grounds justifying relief. Petitioner did, on May 13, 2019, indicate his intent to respond to the Government's Opposition by moving for an extension of time to reply. ([Doc. # 6].) The Court granted that motion, extending the time to file a reply to June 17, 2019. ([Doc. # 7].) No reply was submitted.

incriminating recorded conversation that, he asserts, would have proven that he was not the speaker. (*See id.* at 7-8.) On Ground Four, Petitioner claims that the Court failed to instruct the jury that his co-defendant's grand jury testimony was unrelated to his case. (*See id.* at 8) As relief, Petitioner asks the Court to conduct an evidentiary hearing and to "vacate the judgment and conviction and order a new trial." (*Id.* at 13.)

The Government opposes Petitioner's § 2255 Motion, contending that all four grounds are procedurally barred. The Government contends that "Ground One – which concerns the issue of separate trials – was considered and rejected two times by this court," and that these rulings were challenged on appeal and upheld. (Gov't Opp. to § 2255 Petition [Doc. # 5] at 9.) The Government argues that Grounds Two, Three, and Four are also "procedurally defaulted because they were not raised on appeal or in any post-conviction proceeding," (*id.* at 10), and that Petitioner has failed to overcome this procedural default of Grounds Two, Three, and Four because, "[t]o the extent the petitioner is alleging ineffective assistance of [appellate] counsel, . . . his claims are entirely conclusory and devoid of any detail," (*id.* at 1). The Government also asserts that Petitioner's claims fail on the merits. As to Grounds One and Four, the Government argues that Defendant would not "have been able to preclude the admission of his co-defendant's grand jury testimony," nor "would [he] have been permitted to cross-examine Ms. Feliciano" about her alleged bias against his co-defendant. (*Id.* at 12; *see also id.* at 30.) As to Ground Two, the Government notes that Petitioner's two trial attorneys in fact had the opportunity to impeach Mr. Vega and "effectively, thoroughly and professionally cross-examined" him before the jury. (*Id.* at 26.) Finally, as to Ground Three, the Government notes that "courts have been reluctant to admit spectrographic evidence" like voice analysis because of "strong doubts as to its reliability," and thus, "[g]iven the frailty, and likely inadmissibility, of the 'proffered' expert testimony, it would

4

have been an entirely reasonable tactical decision for trial counsel to choose instead to vigorously attack the credibility of the government's cooperating witnesses." (*Id.* at 28, 30.)

As codified at 28 U.S.C. § 2255(a), a prisoner may seek collateral review of a federal conviction "imposed in violation of the Constitution or laws of the United States." However, "[i]n the case of [such] a collateral challenge based on constitutional claims, two separate rules regarding claim preclusion based on a prior adjudication apply." *Yick Man Mui*, 614 F.3d at 53.

The first of these rules is "the so-called mandate rule," which bars a petitioner from "re-litigat[ing] . . . issues already decided on direct appeal." *Id.* at 53. This rule "prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." *Id.*

This rule bars the challenge regarding trial severance presented at Ground One, as Petitioner has already made this argument to the Second Circuit. Although Petitioner asserts that this "[i]ssue was glossed over by ineffective counsel," (Pet.'s § 2255 Motion at 5), his appellate brief contended that this Court "could – indeed, should – have severed the trials if permitting Mr. Natal to pursue an important line of cross-examination risked prejudice to Morales." (Ex. 1 (Br. for Defendant-Appellant Hector Natal) to Gov't Opp. [Doc. # 5-1] at 39.)  To support this contention, he relied on the same cases— *United States v. Rittweger*, 524 F.3d 171 (2d Cir. 2008), and *Schaffer v. United States*, 362 U.S. 511, 516 (1960)—that he now offers in his § 2255 motion. (*See id.* at 40.) The Second Circuit summarily rejected this severance argument as being "without merit." *Natal*, 849 F.3d at 540. As such, Petitioner's argument at Ground One is procedurally defaulted.

"A second rule that applies in the Section 2255 context prevents claims that *could* have been brought on direct appeal from being raised on collateral review absent cause and prejudice." *Yick Man Mui*, 614 F.3d at 54 (emphasis added); *see also Campino v. United States*, 968 F.2d 187, 190

(2d Cir. 1992) ("[F]ailure to raise a claim on direct appeal is itself a default of normal appellate procedure, which a defendant can overcome only by showing cause and prejudice."). One way a petitioner may show cause and prejudice is by establishing that he received ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A petitioner asserting a claim of ineffective assistance of counsel must (1) "show that counsel's representation fell below an objective standard of reasonableness;" and (2) demonstrate that "any deficiencies in counsel's performance [were] prejudicial to the defense." *Id.* at 688, 692. A court assessing such a claim "must be highly deferential" to counsel, must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. When a petitioner's "*Strickland* claim [is] based on counsel's failure to press an argument on appeal, . . . the Supreme Court has cautioned that these claims are difficult precisely because 'appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.'" *Chrysler v. Guiney*, 806 F.3d 104, 123 (2d Cir. 2015) (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

Here, Petitioner asserts that ineffective assistance of his appellate counsel prevented him from raising Grounds Two, Three, and Four on direct appeal to the Second Circuit. However, Petitioner has not elaborated on these claims except to say that "Petitioner was not part of the appeal process and counsel failed to raise the issue." (*See* Pet.'s § 2255 Motion at 7, 9, 10.) Such a bare and conclusory statement is not sufficient to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Indeed, the Supreme Court has "emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues,"

6

*Jones v. Barnes*, 463 U.S. 745, 746 (1983), and here, an examination of the rigorous sixty-page appellate brief shows that his counsel pursued claims that he believed to have a likelihood of success. Without more elaboration from Petitioner, the Court lacks any basis to conclude that the omissions of Ground Two, Three, and Four were the result of ineffectiveness rather than strategy. Moreover, in addition to failing to allege cause, Petitioner has failed to allege prejudice, as he has not explained how the outcome of the proceedings would have been different were it not for these asserted errors.

Although a district court must construe a pro se habeas petitioner's claims liberally, *see Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006), the petitioner still retains "the burden of proving that his constitutional rights were violated," *see Whitaker v. Meachum*, 123 F.3d 714, 716 (2d Cir. 1997), and "of demonstrating 'good cause' for his failure to exhaust previously any unexhausted claims," *Perkins v. LaValley*, 2012 WL 1948773, at *1 (S.D.N.Y. May 30, 2012) (citing *Rhines v. Weber*, 544 U.S. 269, 279 (2005)). Petitioner has not carried his burden here. As such, Petitioner's four claims are procedurally defaulted, and the Court need not address the merits of these claims, nor conduct a § 2255(b) hearing on these issues.

### IV. Conclusion

Accordingly, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence [Doc. # 1] is DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 17th day of April, 2020.